IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOSEPH KELLY PLUMBAR, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-16-129 |
| | § | |
| SOUTH TEXAS COLLEGE OF LAW, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

Joseph Plumbar started working as an Acquisition and Reference Librarian for the South Texas College of Law in December 2012. In 2014, Plumbar complained to his supervisors that he thought he was being paid less than his white coworkers and asked for an increase. His request was denied. That same year, Plumbar asked that his full-time position be converted to part-time. That request was granted. His part-time duties were primarily to staff a reference desk in the law school's library. In December of that year, his position was terminated. Plumbar sued, alleging that he was paid less than his coworkers because of his race and that his position was terminated based on race and retaliation for his complaint about pay, in violation of Title VII and 42 U.S.C. § 1981. South Texas College of Law responded that it eliminated Plumbar's position based on an anticipated budget shortfall that required cost savings. South Texas asserted that it cut Plumbar's position after examining the demand for reference-desk services during the day and evening hours and learning that the demand was low during the Thursday evening and Saturday hours Plumbar worked.

After discovery, South Texas College of Law moved for summary judgment, Plumbar responded, and South Texas replied. (Docket Entry Nos. 28, 32, 34). Based on a careful review of

the motion, response, and reply; the record; and the relevant law, the court grants South Texas College of Law's summary judgment motion. (Docket Entry No. 28). The reasons for the rulings are set out below, and final judgment is separately entered.

I.   Background[1]

South Texas College of Law hired Joseph Plumbar in December 2012 to work as an Acquisition and Reference Librarian in the Fred Parks Library. (Docket Entry No. 32, Ex. A at ¶ 1). Plumbar worked full-time until the summer of 2014. (*Id.* at ¶ 3). His job duties included staffing the library's reference desk, ordering new materials for the library, and maintaining the materials budget. (*Id.* at ¶ 4; Docket Entry No. 28, Ex. 1A).

Sometime in 2014,[2] Plumbar complained about what he perceived as his racially disparate pay. He complained to his direct supervisor, Mary Lippold, Vice President and Director of Library

---

[1] The summary judgment record evidence includes affidavits from Stephen Alderman, Vice President of Human Resources and General Counsel for South Texas College of Law (Docket Entry No. 28, Ex. 1); Mary Lippold, Associate Director of Administrative Services for the Fred Parks Law Library at South Texas College of Law (*Id.*, Ex. 2); Miles Bradshaw, counsel for South Texas College of Law in this suit (*Id.*, Ex. 3); and Joseph Plumbar, the plaintiff (Docket Entry No. 32, Ex. A). The record evidence also includes deposition excerpts from the plaintiff, Joseph Plumbar (Docket Entry No. 28, Ex. 3A; Docket Entry No. 32, Ex. B); Mary Lippold (Docket Entry No. 28, Ex. 3B; Docket Entry No. 32, Ex. C); and Steve Alderman (Docket Entry No. 28, Ex. 3C). The record evidence also includes an email exchange between Mary Lippold and Steve Alderman (Docket Entry No. 32, Ex. D), and the pay-grade chart for the South Texas College of Law (*Id.*, Ex. E).

[2] Plumbar stated that he first complained about what he perceived as racially disparate compensation in June 2014. (Docket Entry No. 32, Ex. A at ¶ 7). Stephen Alderman, Vice President of Human Resources and General Counsel for the school, stated that Cowan informed him of Plumbar's complaints that he was paid less than his peers "sometime before June 2014," but that Cowan did not inform Alderman until "sometime in 2014" after Alderman met with Plumbar that Plumbar thought that the disparate pay was because of his race. (Docket Entry No. 28, Ex. 1 at ¶¶ 4, 6). This factual dispute does not preclude granting the summary judgment motion.

Services.³ (Docket Entry No. 32, Ex. A at ¶ 7). Lippold told Plumbar to take his complaint to David Cowan, Director of the library at the time. (*Id.*). Cowan told Plumbar that his pay was set using the American Association of Law Libraries Survey standards, and that his pay was proper considering his job description and responsibilities and his experience as a professional librarian. (*Id.*). Plumbar asked to meet with Stephen Alderman, Vice President of Human Resources and General Counsel for South Texas College of Law. (*Id.*; Docket Entry No. 28, Ex. 1 at ¶ 5). During that meeting, Plumbar argued that the American Association of Law Libraries Survey supported an increase in his pay. (Docket Entry No. 28, Ex. 1 at ¶ 5). Alderman disagreed, explaining that Plumbar's position corresponded to several different job categories on the Survey and that his pay was properly set based on those categories. (*Id.*). Alderman and Plumbar dispute whether Plumbar complained about race discrimination in his pay during this meeting. (*Compare id. with* Docket Entry No. 32, Ex. A at ¶ 7). Alderman does not dispute that he knew Plumbar had told Cowan of his belief that his salary-increase request was denied because of his race. (Docket Entry No. 28, Ex. 1 at ¶ 6).

In June 2014, Plumbar asked to reduce his full-time position to part-time so he could concentrate on his private law practice. (Docket Entry No. 28, Ex. 1 at ¶ 7). His request was approved, and Plumbar became a part-time employee in July 2014. (*Id.*). Plumbar's part-time schedule included staffing the reference desk on Thursday evenings and Saturday during the day. (*Id.*, Ex. 2 at ¶ 8).

---

³ Lippold stated that Plumbar complained that "other people were making more than he was," but that she was unaware of any racial discrimination claims with respect to his compensation. (Docket Entry No. 32, Ex. C at 62–63; Docket Entry No. 28, Ex. 2 at ¶ 9). This factual dispute does not preclude granting the summary judgment motion.

3

In the summer of 2014, Cowan retired as Director of Library Services. (*Id.* at ¶ 6). Mary Lippold, Associate Director of Administrator Services, and Monica Ortale, Associate Director of Public Services, were made co-directors of the library until a new director was found. (*Id.*). In the fall of 2014, South Texas faced a budget shortfall in the coming fiscal year. ((Docket Entry No. 28, Ex. 1 at ¶ 8). Lippold and Ortale were directed to "be conscious of cost savings in every aspect of the library." (*Id.*; Ex. 1A; Ex. 2 at ¶ 7). After reviewing the trends in the demand for library reference services at different times, Lippold and Ortale decided to cut Plumbar's hours from the reference desk because low demand made it unnecessary to provide reference services during those times. (*Id.*, Ex. 2 at ¶ 8). Lippold told Alderman that because of the low demand for the reference librarian's services on Thursday evenings and weekends, she recommended terminating Plumbar. (*Id.*, Ex. 1 at ¶ 8). Alderman approved the decision. (*Id.*). Plumbar was notified on December 5, 2014 that his position was terminated. (*Id.* at ¶ 9).

On June 4, 2015, Plumbar filed a discrimination charge with the EEOC, alleging race discrimination and retaliation in violation of Title VII. The EEOC issued a right-to-sue letter on October 16, 2015. On January 15, 2016, Plumbar filed this suit. He alleges that he was paid less based on race discrimination and that he was terminated based on both race discrimination and retaliation for complaining about his disparate pay, in violation of Title VII and 42 U.S.C. § 1981. (Docket Entry Nos. 1, 23). South Texas moves for summary judgment on the basis that Plumbar's position was terminated based on budget cuts, a legitimate nondiscriminatory and nonretaliatory reason.[4] The parties' arguments and the record evidence are analyzed under the applicable legal

---

[4] South Texas also moves for summary judgment on the ground that the amount Plumbar was paid was based on legitimate, nondiscriminatory criteria. Although Plumbar alleges that he was paid less because

standards.

**II.   The Summary Judgment Standard**

"Summary judgment is required when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015) (quoting FED. R. CIV. P. 56(a)). "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). "The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.'" *Id.* (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Where the non-movant bears the burden of proof at trial, the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Id.* (quotation marks omitted); *see also Celotex*, 477 U.S. at 325. Although the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). "A fact is 'material' if its resolution in favor of one party might affect the outcome

---

of his race in his complaint, he did not assert a stand alone disparate-pay claim. Plumbar made it clear in his response to the summary judgment motion that the gravamen of his disparate-treatment claim was his allegedly unlawful termination, not the disparate pay. He relies on his disparate-pay allegations as evidence supporting his discriminatory and retaliatory termination claims.

of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

"Once the moving party [meets its initial burden], the non-moving party must 'go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'" *Nola Spice*, 783 F.3d at 536 (quoting *EEOC*, 773 F.3d at 694). The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary-judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008); *see also Nola Spice*, 783 F.3d at 536.

### III. Analysis

#### A. Employment Discrimination

##### 1. The Legal Standard

Claims of racial discrimination under 42 U.S.C. § 1981 are analyzed under the same evidentiary framework as claims of employment discrimination under Title VII. *Finley v. Florida*

*Par. Juvenile Det. Ctr.*, 574 F. App'x 402, 404 (5th Cir. 2014) (citing *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 n. 2 (5th Cir.1996)). Employment discrimination in violation of Title VII can be proved by either direct or circumstantial evidence. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000). Evidence is direct if it would prove the fact in question without inference or presumption. *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 415 (5th Cir. 2003) (citations omitted). If no direct evidence exists, the court uses the familiar burden-shifting framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), to determine whether summary judgment is appropriate. *See Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 316 (5th Cir. 2004). The legal standard is well settled:

> To survive summary judgment under *McDonnell Douglas*, the plaintiff must first present evidence of a *prima facie* case of discrimination. If the plaintiff presents a *prima facie* case, discrimination is presumed, and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the underlying employment action. If the employer is able to state a legitimate rationale for its employment action, the inference of discrimination disappears and the plaintiff must present evidence that the employer's proffered reason was mere pretext for racial discrimination.

*Davis*, 383 F.3d at 317 (citations omitted).

The elements of a *prima facie* showing of discrimination are that the plaintiff: (1) is a member of a protected class; (2) was qualified for the position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class or, in the case of disparate treatment, was treated more harshly than others who were similarly situated. *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001).

The defendant's burden of articulating a legitimate, nondiscriminatory reason for its adverse employment action is a burden of production, not persuasion. *See St. Mary's Honor Ctr. v. Hicks*,

509 U.S. 502, 506–07 (5th Cir. 1993). The "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* at 507 (internal citations and quotation marks omitted). The defendant must produce "admissible evidence, . . . which, *if believed by the trier of fact*, would support a finding that unlawful discrimination was not the cause of the employment action." *Id.* at 507.

If the employer meets its burden, the *prima facie* case dissolves, and the burden shifts back to the plaintiff to raise a fact dispute material to determining either: (1) that the employer's proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another "motivating factor" is the plaintiff's protected characteristic. *Vaughn*, 665 F.3d at 636 (quoting *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)); *see also Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002) ("On summary judgment . . . the plaintiff must substantiate his claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision."). "Once a Title VII case reaches the pretext stage, the only question on summary judgment is whether there is a conflict in substantial evidence to create a jury question regarding discrimination." *Shackelford*, 190 F.3d at 404.

When evaluating pretext, the focus is on the employer's motivation for the adverse employment action, not whether the employer acted wisely or based its decision on an accurate understanding of the facts. Title VII does not require objectively fair-minded or well-reasoned business decisions. It does require that employers refrain from making business decisions on a prohibited basis, including race discrimination or retaliation for protected conduct. *LeMaire v.*

8

*Louisiana Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007). It is not enough for a plaintiff to show a material factual dispute as to whether the company's decision to take an adverse employment action against her was good business, or to show that the employer was wrong about the underlying facts. The question is whether the employer had a good-faith belief that the facts that motivated the adverse action were true and warranted the action. *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 379 (5th Cir. 2010).

### 2. Discussion

Plumbar has shown three of the four elements of a *prima facie* case of discrimination: he is a member of a protected class; he had the minimum qualifications for his position; and he suffered an adverse employment action when he was terminated in December 2014. (Docket Entry No. 28 at 9). South Texas contends that Plumbar cannot show the fourth element of a *prima facie* case because his position was eliminated and never filled, and therefore he was not replaced by someone outside the protected class. Plumbar contends that because his position was the only one eliminated and his job duties were assigned to non-African American librarians, he has made a *prima facie* showing of discrimination.

Plumbar relies on *Howard v. United Parcel Serv., Inc.*, 447 F. App'x 626 (5th Cir. 2011), to support his argument. In that case, the plaintiff's position was eliminated, he was demoted, and all of his job duties were absorbed. *Id.* at 627–28. His job duties were absorbed by a white manager. *Id.* at 628. The defendant employer argued that because the plaintiff's position was eliminated and no one was hired to replace him, the plaintiff could not make a *prima facie* showing of discrimination. *Id.* at 629 n.2. The court rejected that argument because the plaintiff's position was

the only one eliminated and all of his job duties were assumed by someone outside the protected class. *Id.*

Plumber has neither presented nor pointed to evidence that all of his job duties were assumed by a single employee outside the protected class. The email between Lippold and Alderman that Plumbar presents in support of his argument weighs against it. In that email, Lippold wrote that because the library intended to end reference desk services after 6:00 p.m. on weeknights and not provide services Saturday—most of the hours Plumbar worked—there would be no need for Plumbar or anyone else. (Docket Entry No. 32, Ex. D). Plumbar did work on Friday afternoons, and the reference desk would remain open then. Other librarians would be rotated in to cover the desk on Friday afternoons, but this was a small percentage of the hours Plumbar had worked in his part-time position. (*Id.*). Most of his reference-desk hours were eliminated, and the few hours he worked that remained were assigned to several other librarians.

This case is similar to *Griffin v. Kennard Indep. Sch. Dist.*, 567 F. App'x 293, 294–95 (5th Cir. 2014). In *Griffin*, the plaintiffs worked as custodians for the defendant school district and performed bus-driving duties before and after school. *Id.* at 293. Budget cuts led to changes in the custodial schedules that eliminated the plaintiffs' bus-driving duties. *Id.* at 293–94. Those duties were reassigned among the other bus drivers. *Id.* at 294. The Fifth Circuit found that the plaintiffs were not "replaced" by someone outside their protected class. *Id.* at 294–295. "We have held that an employee has not been 'replaced' . . . when his former duties are distributed among other co-workers." *Id.* So too here. Plumbar cannot show that he was "replaced" by someone outside the protected class when the fraction of his duties that remained were distributed among several

coworkers.

Plumbar alternatively argues that he satisfies the fourth element of the *prima facie* showing because other similarly situated employees were treated more favorably than he was. Plumbar points to two employee, Barbara Szalkowski and Heather Kushnerik, whose positions survived the fall 2014 budget cuts. Neither is similarly situated to Plumbar. Both Szalkowski and Kushnerik were full-time employees; Plumbar was part-time. Szalkowski and Kushnerik had substantially different job duties than Plumbar. (Docket Entry No. 32, Ex. B at 29–31). Szalkowski was a Senior Catalog Librarian, and Kushnerik was a Special Collections Librarian. (*Id.*). Both could step in to staff the reference desk if needed, but staffing the reference desk on Thursday evenings and Saturdays during the day was Plumbar's primary job responsibility. In *Morris v. Town of Indep.*, 827 F.3d 396 (5th Cir. 2016), the court found that the plaintiff's proffered comparator was not similarly situated because the plaintiff was part-time and the comparator was full-time, they had different job responsibilities, and the plaintiff had been the subject of verbal complaints about her performance, but the comparator had not. *Id.* at 401–402; *see also id.* at 401 n.17 (citing *Johnson v. Univ. of Iowa*, 431 F.3d 325, 330 (8th Cir. 2005) ("Generally, part-time employees are not similarly situated to full-time employees."); *Ilhardt v. Sara Lee Corp.*, 118 F.3d 1151, 1155 (7th Cir.1997) ("[F]ull-time employees are simply not similarly situated to part-time employees.")). Because neither Szalkowski nor Kushnerik is similarly situated to Plumbar, he has not made a *prima facie* showing of race discrimination in his termination.

Even assuming that Plumbar had made a *prima facie* showing, South Texas has proffered a legitimate, nondiscriminatory reason for terminating Plumbar. South Texas presents competent

summary judgment evidence that it faced a 2015 fiscal year budget shortfall and in the fall of 2014 made institution-wide cuts to decrease costs. (Docket Entry No. 28, Ex. 1 at ¶ 8). Lippold and Ortale, the interim co-directors of the library, were instructed to be "conscious" of cost savings in the library. (*Id.*, Ex. 2 at ¶ 7). In response to the anticipated budget shortfall and the directive to be conscious of cost savings, Lippold and Ortale examined the patterns of demand for reference-desk services and found that it was low on Thursday evenings and Saturdays. (*Id.* at ¶¶ 7–8). At those times, the library was used primarily as a place to study for tests and finals rather than for research. (*Id.*). Lippold and Ortale concluded that there was no need to staff the library reference desk on Thursday evenings or Saturdays. (*Id.*). These were the bulk of Plumbar's work hours. (*Id.* at ¶ 8). There was such a reduced need for his position that it could easily be eliminated, and it was. (*Id.* at ¶¶ 7–8; *Id.*, Ex. 1 at ¶ 8). Budgetary constraints are a well-recognized legitimate nondiscriminatory reason for eliminating a position. *See Cooper v. Dall. Police Ass'n*, 278 F. App'x 318, 320 (5th Cir. 2008) (cost cuts were as a legitimate, nonretaliatory reason for the adverse employment action); *Fierros v. Tex. Dep't of Health*, 247 F. App'x 478, 479 (5th Cir. 2007) (a budget shortfall satisfied the defendant's burden of presenting a legitimate nondiscriminatory reason for the adverse employment action).

Plumbar argues that the anticpated budget shortfall and resulting cost-consciousness were a pretext for discrimination because he was the only library employee whose position was terminated during this time, and because the library was "fully funded" until August 2015. South Texas does not dispute these facts, but they do not support an inference that Plumbar's termination was a pretext for race discrimination or that discrimination was a motivating factor in the termination decision.

Plumbar does not dispute that the law school anticipated a budget shortfall or that the administration instructed the library directors to be conscious of cost savings, but he denies that there a "true budget crisis." (Docket Entry No. 32, Ex. B at 40–41). The record evidence Plumbar cites does not support his argument. The documents he cites state that while there was a budget in place for the coming fiscal year, Lippold was instructed to "watch spending," (*Id.*, Ex. C at 46–47), and to be "conscious of cost savings in every aspect of the library."[5] (Docket Entry No. 28, Ex. 2 at ¶ 7). And although Plumbar was the only library employee whose position was eliminated at that time, three other employees at South Texas College of Law had their jobs eliminated and were terminated during the fall of 2014. (*Id.*, Ex. 3C at 19–21). Plumbar cites no cases, and the court has found none, stating that an employer must have implemented a formal reduction-in-force or be on the verge of financial collapse to terminate positions and employees to cut costs in order to avoid or lessen a budget shortfall.

The cases Plumbar does cite presented far more evidence than he identifies here that the employer's legitimate nondiscriminatory reason was a pretext or motivating factor for a discriminatory employment action. *See Mercer v. Arbor E & T, LLC*, No. 11-CV-3600, 2013 WL 164107, at *12 (S.D. Tex. Jan. 15, 2013) (the employer's accounts of the plaintiff's demotion inconsistently included demoting her because of her choice, because the employer wanted to replace

---

[5] Plumbar also argues that Lippold lacked the budgetary knowledge to implement cost-saving measures. This argument is a non-starter and a mischaracterization of the record evidence. Reading Lippold's statements in context shows that when she stated that she only had control over a small part of the budget was in her prior role when Cowan was still the director and were not made about her role as interim co-director. (Docket Entry No. 32, Ex. C at 20–23, 27, 45). In her affidavit, and other parts of her deposition, Lippold makes clear that as interim co-director she was tasked with managing the library budget as a whole. (Docket Entry No. 28, Ex. 2 at ¶¶ 6–9).

13

her with a more qualified employee, and as a disciplinary measure; the employer failed to follow its own demotion procedures in her case; and the evidence of the circumstances inconsistently included a budget shortfall, a lack of need for the plaintiff's position, and that the plaintiff did not actually perform the job duties that the employer stated were taken away to "accommodate" her); *Gerdin v. CEVA Freight, L.L.C.*, 908 F. Supp. 2d 821, 831 (S.D. Tex. 2012) (the evidence of pretext was sufficient when the employer stated that the plaintiff was terminated during a reduction-in-force when she was fired months before the reduction-in-force occurred, she was fired three weeks after returning from maternity leave, the employer stated she was fired to outsource her job duties, but that never occurred; the employer failed to follow its internal procedures in firing her; no one else was fired when she was; and the plaintiff's supervisor stated that he "hop[ed] that having kids [was] not going to interfere with [her] ability to work full time").

The thrust of Plumbar's pretext arguments are to second-guess the measures South Texas used to cut costs. (*See* Docket Entry No. 32 at 16 n.5) (listing the salaries of other employees who retired and "free[d] up" funds in the library budget). The Fifth Circuit has "stated many times before" that courts should "not engage in second-guessing of an employer's business decisions." *Goree v. Comm'n Lincoln Par. Det. Ctr.*, 437 F. App'x 329, 333 (5th Cir. 2011).

Plumbar also argues that because he did not complain about low usage at the reference desk, and other white librarians who did complain were not terminated, he was treated differently. Plumbar's primary job responsibility as a part-time employee was staffing the reference desk. Other full-time employees who staffed the desk had other primary job responsibilities. Plumbar has not pointed to a similarly situated employee treated differently than he was. Plumbar's argument that

14

because he did not complain about slow hours during his assigned times at the reference desk, he should not have been terminated, is not persuasive. He does not dispute Lippold's statement that she and Ortale undertook their own review to determine what hours at the reference desk saw the least demand. (Docket Entry No. 28 at ¶¶ 6–8).

Even if Plumbar had made a *prima facie* showing of race discrimination, he has not raised a factual dispute as to whether the South Texas College of Law's proffered explanation was pretextual or a motivating factor for discrimination. The College's summary judgment motion on Plumbar's race-discrimination claim is granted.

### B. Retaliation

#### 1. The Legal Standard

Title VII prohibits retaliation when an employee "has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. §2000e-3. The elements of a *prima facie* showing of retaliation are that: (1) the plaintiff engaged in an activity protected by Title VII; (2) an adverse action occurred; and (3) a causal link existed between the protected activity and the adverse action. *Zamora v. City Of Houston*, 798 F.3d 326, 331 (5th Cir. 2015).

In *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013), the Supreme Court held that a Title VII retaliation claim requires the plaintiff to show that the protected activity was a but-for cause of the employer's adverse action. There is some disagreement among the circuits as to whether this requires a plaintiff to show but-for causation as part of her *prima facie* case of retaliation, or to show but-for causation only at the third step of the *McDonnell-Douglas* framework to rebut the proffered legitimate nonretaliatory reason for the adverse employment action. *Smith v.*

*Bd. of Supervisors of S. Univ.*, 656 F. App'x 30, 33 n.4 (5th Cir. 2016) (citing *Young v. City of Phila. Police Dep't*, 651 F. App'x. 90, 97 & n.12 (3d Cir. June 3, 2016) (noting the split and resolving it by noting that "[a]pplying the 'but-for' standard at the prima facie stage would effectively eliminate the need to use the *McDonnell-Douglas* burden shifting framework because plaintiffs who can prove 'but-for' causation at the prima facie stage would essentially 'be able to satisfy their ultimate burden of persuasion without proceeding through the pretext analysis'" (citations omitted)); *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 250–51 (4th Cir. 2015) (noting circuit split as to whether *Nassar* applies to the causation prong of the *prima facie* case of retaliation)). The Fifth Circuit has twice declined to decide which way to resolve this circuit split. *Id.*; *Hernandez v. Metro. Transit Auth. of Harris Cty.*, 673 F. App'x 414, 419 n.6 (5th Cir. 2016). This court need not do so because Plumbar's retaliation claim fails whether he is required to show but-for causation at the *prima facie* stage or at step three of the *McDonnell-Douglas* framework. *See Smith*, 656 F. App'x at 33 n.4 (even assuming the plaintiff was not required to show but-for causation until the third step of the *McDonnell-Douglas* framework—the "most favorable" standard to the plaintiff—she could not meet her burden); *see also Montgomery-Smith v. Louisiana Dep't of Health & Hosps.*, No. CV 15-6369, 2017 WL 2256801, at *5 (E.D. La. May 22, 2017).

2. **Discussion**

Even assuming that Plumbar made a *prima facie* showing of retaliation,[6] his claim does not

---

[6] Although Plumbar has shown that he made a protected complaint and that he was terminated, there is a factual dispute as to a causal connection between Plumbar's complaints and his termination. Plumbar argues that the close timing between his complaints and his termination satisfies this element. The Fifth Circuit has found that a "four-month gap in time, standing alone, is insufficient to establish prima facie evidence of causation." *Barkley v. Singing River Elec. Power Ass'n*, 433 F.App'x. 254, 260 (5th Cir. 2011). And the Supreme Court has approvingly acknowledged other circuit court decisions that found three and

survive summary judgment. South Texas College of Law identified the reason for eliminating Plumbar's job and terminating his employment—the lack of demand for reference-desk services during the hours he worked—as the type of cost-saving measure the library was directed to identify and implement in the face of an anticipated budget shortfall. That shifted the burden to Plumbar to show that his termination would not have occurred "but for [the employer's] retaliatory motive." *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 219 (5th Cir. 2016) (citing *Nassar*, 133 S. Ct. at 2533). Plumbar argues that he does not have to show but-for causation, but he cites inapplicable pre-*Nassar* cases. (Docket Entry No. 32 at 19). This is simply not the current law. Plumbar's arguments supporting an inference of retaliation are otherwise the same arguments he made to show discrimination. The arguments lack support in the record and in the case law, and are not a basis to deny summary judgment.

Even assuming Plumbar had made a *prima facie* showing of retaliation, he has not raised a factual dispute material to showing that his termination would not have occurred but for South Texas College of Law's retaliatory motive. South Texas College of Law's summary judgment motion on

---

fourth month periods too long to allow for an inference of causation. *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 428 n.23 (5th Cir. 2017) (citing *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). Cowan informed Alderman "sometime in 2014" that Plumbar had complained to him that he believed his salary request was denied because of his race. (Docket Entry No. 28, Ex. 1 at ¶ 6). Plumbar states that this occurred in "late 2014," but there is no record evidence to support this timeline. (Docket Entry No. 32 at 19). In fact, the record evidence indicates that Cowan retired in summer 2014, so the reasonable inference would be that this information was passed along before his retirement—outside the threshold of temporal proximity sufficient to support an inference of retaliation, absent other evidence. In his affidavit, Plumbar states that he also complained to Lippold in September 2014—three months before he was terminated. (Docket Entry No. 32, Ex. 1 at ¶ 8). Lippold's sworn testimony contradicts this statement. Lippold stated that Plumbar complained that "other people were making more than he was," but that she was unaware of any racial discrimination claims with respect to his compensation. (*Id.*, Ex. C at 62–63; Docket Entry No. 28, Ex. 2 at ¶ 9). Because the court can resolve this motion at a different step of the *McDonnell-Douglas* framework, this factual dispute does not defeat summary judgment.

Plumbar's retaliation claim is granted.

IV. **Conclusion**

South Texas College of Law's summary judgment motion is granted as to all Plumbar's claims. (Docket Entry No. 28). Final judgment is entered by separate order.

SIGNED on July 3, 2017, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge